# United States District Court
# District of Massachusetts

STEVEN CARVER,
SALLY J. CARVER,
    Plaintiffs,

    v.                              CIVIL ACTION NO. 13-10005-MLW

THE BANK OF NEW YORK MELLON
f/k/a THE BANK OF NEW YORK, as Trustee
for the holders of the Certificates, First Horizon
Mortgage Pass-Through Certificates Series
FHAMS 2005-FA11, by First Horizon Home Loans,
a division of First Tennessee Bank National Association,
Master Servicer, in its capacity as agent for the Trustee
under the Pooling and Servicing Agreement ("BONYM"),
    Defendant.

## *MEMORANDUM AND ORDER ON PLAINTIFF'S REVISED MOTION TO COMPEL DISCOVERY (#58)*

COLLINGS, U.S.M.J.

*1. Background*

This action, a try title pursuant to Massachusetts General Laws chapter

240, was removed from the Commonwealth of Massachusetts Land Court on January 2, 2013. (#1) On January 22, 2013, the defendant, The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FHAMS 2005-FA11, by First Horizon Home Loans, a division of First Tennessee Bank National Association, Master Servicer, in its capacity as agent for the Trustee under the Pooling and Servicing Agreement ("BONYM"), filed an answer to the Second Amended Petition to Try Title Pursuant to G. L. c. 240 as well as a four-count counterclaim alleging claims for Breach of Contract (Count I), Unjust Enrichment (Count II), Declaratory Judgment (Count III) and Possession (Count IV). (#9) On February 12, 2013, the plaintiffs filed an answer to the counterclaim. (#10)

## II. *The Facts*

The facts so far as able to be gleaned from the record developed to date are that according to a foreclosure deed recorded in the Plymouth County Registry of Deed on March 11, 2013, in Book 42779, Page 138 (#19-1, Exh. A), BONYM is the record owner of property located at 157 Old Ocean Street, Marshfield, Massachusetts (the "Property"). (#21 ¶ 1) On November 21, 2005,

Steven Carver executed a note to lender First Horizon Home Loan Corporation in the amount of three hundred thirty-three thousand seven hundred and fifty dollars ("Carver Note"). (#19-1, Exh. B; #21 ¶ 2) In order to secure the loan obligation, Steven Carter and Sally J. Carver, as joint tenants, gave a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as a nominee for First Horizon Home Loan Corporation on the Property which was recorded at the Plymouth County Registry of Deeds on December 5, 2005 in Book 31854, Page 219-34 ("Carver Mortgage"). (#19-1, Exh. C; #21 ¶ 3) On December 29, 2005, the Carver Note was transferred to BONYM, and BONYM has held the Carver Note since then.

An assignment of mortgage from MERS to First Horizon Home Loans, A Division of First Tennessee Bank National Association ("First Horizon Home Loans") effective December 17, 2008 was recorded at the Plymouth County Registry of Deeds on January 26, 2009 in Book 36722, Page 128-29. (#19-1, Exh. D; # 21 ¶ 4) By letter dated June 17, 2008, First Horizon Home Loans advised Steven and Sally J. Carver that consequent to their failure to meet obligations, their mortgage and note on the Property were in default and that they had until September 15, 2008, i.e., ninety days, within which to cure the default. (#19-1, Exh. F; #21 ¶ 6) On April 26, 2011, Steven and Sally J. Carver

entered into a loan modification agreement with First Horizon Home Loans that was recorded at the Plymouth County Registry of Deeds on September 7, 2011 in Book 40295, Page 24. (#19-1, Exh G; #21 ¶ 7)

Nationstar Mortgage, LLC ("Nationstar") began servicing the Carvers' mortgage loan effective August 16, 2011. (#21 ¶ 8) By letter dated September 9, 2011, Nationstar, as a sub-servicer of First Tennessee Bank National Association, advised Steven Carver and Sally J. Carver individually that they were in default on the loan and mortgage for failure to make August and September 2011 mortgage payments, and that they had one hundred fifty days to pay the full amount of the default. (#19-1, Exh. H; #21 ¶ 9) Steven Carver and Sally J. Carver did not cure the default. (#21 ¶ 11) As a consequence, in May 2012 Nationstar retained the law firm of Doonan Graves and Longoria, LLC to commence foreclosure proceedings on behalf of BONYM, including filing a Servicemembers Action with the Massachusetts Land Court. (Affidavit of Reneau J. Longoria, Esq. #20 ¶ 5; #21 ¶ 11) On June 11, 2012, BONYM filed a Complaint To Determine Military Status, i.e., a Complaint to Foreclose a Mortgage, and a Mortgagee's Affidavit with the Massachusetts Land Court, Civil Action No. 12 MISC 466132. (#20 ¶ 5; #20-1, Exh. 1; #21 ¶ 12) An assignment of mortgage on the Property from First Horizon Home Loans to

4

BONYM dated June 13, 2012 was recorded at the Plymouth County Registry of Deeds on June 21, 2012 at Book 41543, Page 321. (#19-1, Exh. E; #21 ¶¶ 5, 13)

In connection with the Servicemembers Action, the Order of Notice was published in the Marshfield Mariner on August 15, 2012, it was served on Steven Carter and Sally J. Carter, individually, on August 22, 2012, and was recorded at the Registry of Deeds on August 27, 2012. (#20-1, Exh. 2) On September 5, 2012, pursuant to Mass. Gen. L. c. 244 §§ 14 and 17B, Notice of Intent to Foreclose Mortgage and Intent to Pursue Deficiency After Foreclosure of Mortgage was sent via certified mail to Steven Carver and Sally J. Carver. (#20 ¶ 7; #20-1, Exh. 3; #21 ¶ 16) On even date, an affidavit of counsel attesting to the mailing of the Notices of Intent to Foreclose Mortgage and Pursue Deficiency After Foreclosure of Mortgage was executed in compliance with the requirements of Mass. Gen. L. c. 244 § 17B. (#20 ¶ 8; #20-1, Exh. 4; #21 ¶ 17) On September 5, 2012, September 12, 2012, and September 19, 2012 the Notice of Mortgagee's Sale of Real Estate was published in the Marshfield Mariner noticing the sale for October 2, 2012. (#20 ¶ 9; #20-2, Exh. 5; #21 ¶ 15) On September 11, 2012, BONYM's motion for judgment on the Complaint to Determine Military Status was allowed, it being ordered and

adjudged that Steven Carver and Sally J. Carver were not entitled to the benefits of the Servicemembers Civil Relief Act. (#20 ¶ 10; #20-2, Exh. 6; #21 ¶ 19) On September 13, 2012, Jeffrey Jefferson, Limited Vice President, Nationstar, as attorney in fact for BONYM, executed an Affidavit Regarding Note Secured by Foreclosure Mortgage with respect to the Property wherein he attested that he was a duly authorized agent of Nationstar, that Nationstar was the mortgage loan servicer, and that BONYM, the foreclosing mortgagee, was the authorized agent of the holder of the Carver Note on the dates when notice of the sale relating to the mortgage at issue was published. (#19-1, Exh. I; #21 ¶ 18)

As of September 9, 2012, the Property had an approximate fair market value of $220,000.00. (#19 ¶ 26; 19-2, Exh. J; #21 ¶ 38) The October 2, 2012 Mortgagee's Foreclosure Sale of the Property was continued by public proclamation to October 17, 2012; courtesy Notice of Mortgagee's Continued Foreclosure Sale was sent to Steven and Sally J. Carver by certified mail on October 11, 2012. (#9-1, Exh. A; #20 ¶ 11; #20-2, Exh. 7; #21 ¶¶ 20, 21) The October 17, 2012 Mortgagee's Foreclosure Sale of the Property was further continued by public proclamation to November 16, 2012; courtesy Notice of Mortgagee's Continued Foreclosure Sale was sent to Steven and Sally J. Carver

by certified mail on November 11, 2012. (#9-1, Exh. A; #20 ¶ 12; #20-2, Exh. 8; #21 ¶¶ 22, 23) The foreclosure sale occurred on November 16, 2012, and the Property was purchased by BONYM for $66,000.00 (Purchase Price). (#19 ¶ 19; #19-1, Exh. A; #20 ¶ 13; #20-2, Exh. 9; #21 ¶ 24) At the time of the foreclosure sale, Steven Carver and Sally J. Carver were due for the February 2012 payment. (#19 ¶ 21; #21 ¶ 25)

The total debt owed by Steven Carver and Sally J. Carver as of November 16, 2012, not including legal fees and costs, was $407,403.16. (#19 ¶ 22; #21 ¶ 26) From the time of the foreclosure referral in May 2012 until November 19, 2012, the recoverable foreclosure fees and costs totaled $7,095.09. (#19 ¶ 23; #21 ¶ 27) Litigation fees and costs from November 2012 through December 10, 2013, total $12,585.60. (#19 ¶ 24; #21 ¶ 28) Steven Carver owes a deficiency of $361,083.85. (#19 ¶ 25; #21 ¶ 29) A Post-Foreclosure 3-Day Notice to Quit dated March 21, 2013 was served on Steven Carver on April 1, 2013. (#20 ¶ 14; #20-2, Exh. 10; #21 ¶ 34) BONYM has not rented or leased the Property to Steven Carver and/or Sally J. Carver since acquiring it at the foreclosure sale. (#19 ¶ 27; #21 ¶ 35) BONYM has never had a tenancy relationship with Steven Carver and/or Sally J. Carver. (#19 ¶ 28; #21 ¶ 36) Since acquiring the Property at the foreclosure sale, BONYM has not received any use and

occupancy payments from Steven Carver and/or Sally J. Carver. (#19 ¶ 29; #21 ¶ 37) In short, the Carvers have been living at the property rent-free since August, 2011.[1]

## II. *The Discovery Dispute*

Plaintiffs' counsel claims he needs certain discovery and filed Plaintiff's Revised Motion to Compel Discovery (#58); defendant opposes the discovery requests contending that they deal with irrelevant matters under the current state of the law. The Court heard the motion on October 30, 2014. At the hearing, plaintiff's counsel, in his words "to cut to the chase", listed the documents he seeks to discover by filing the motion. Specifically, he seeks a complete copy of the MERS Rules for 2009, the servicing agreements between MERS and Nationstar, MetLife and First Horizon, and MERS membership agreements with those parties.

First, one of the asserted reasons why the discovery is necessary is plaintiffs' contention that MERS cannot execute an assignment itself and that only MERS members can execute the assignment. The Court concludes that this

---

[1] The Court notes that Sally J. Carver passed away on February 28, 2014 while this litigation was pending. *See* #28. However, for convenience, the Court shall refer to Steven and Sally J. Carver as "the plaintiffs" or "the Carvers" in the within Memorandum and Order, Etc.

is an incorrect statement, and any discovery which goes to that issue is irrelevant.

As described by the First Circuit,

> MERS . . . was formed by a consortium of residential mortgage lenders and investors desiring to streamline the process of transferring ownership of mortgage loans in order to facilitate securitization. Joining MERS enables lenders to name MERS as the mortgagee in mortgages that they originate, service, or own. MERS itself acts solely as a 'nominee' for the owner or servicer of a mortgage, giving MERS legal title to the mortgage but leaving it with no beneficial interest in the loan.

*Mills v. U.S. Bank, NA,* 753 F.3d 47, 49 (1 Cir., 2014)(internal citations and quotation marks omitted).

And so it is in this case. Under the terms of the mortgage, "MERS is a separate corporation that is acting solely as nominee for Lender [First Horizon Home Loan] and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument." As the mortgagee, MERS held legal title to the Property securing payment of the debt owed. *Eaton v. Federal Nat. Mortg. Ass'n.*, 462 Mass. 569, 575-76, 969 N.E.2d 1118, 1124 (Mass. 2012). "Absent a provision in the mortgage instrument restricting transfer - and there is none here - a mortgagee may assign its mortgage to another party. Because such an

assignment is an interest in land, it requires a writing signed by the assignor." *Culhane v Aurora Loan Services of Nebraska,* 708 F.3d 282, 292-93 (1 Cir., 2013) (citing Mass. Gen. L. c. 183 § 3 and *U.S. Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 648-49, 941 N.E.2d 40, 51 (2011)(footnote omitted)). It is undisputable that as the mortgagee and holder of the legal title to the Carver Mortgage, MERS had the authority to assign its legal title to First Horizon Home Loans. *See*, e.g., *Butler v. Deutsche Bank Trust Co. Americas,* 748 F.3d 28, 32-3 (1 Cir., 2014) ("Suffice it to say, Massachusetts allows a mortgage to be split from its underlying note, and where, as here, MERS possesses a legal interest in that mortgage, such an interest is transferable. (internal citations, quotation marks and footnote omitted)); *Mills*, 753 F.3d at 51 ("In short, MERS validly held legal title to the mortgaged property and was doubly authorized (under both Massachusetts common law and the terms of the mortgage contract) to assign its interest to the foreclosing entity."); *Culhane,* 708 F.3d at 292-93. Although the plaintiffs allege that "[t]he MERS assignment does not state whether MERS purports to assign the mortgage in its capacity as nominee for a principal, if any" (#8 ¶ 51), that contention is irrelevant. Discussing language identical to that in the Carver Mortgage, the Massachusetts Land Court wrote that "[t]he

Mortgage provides 'MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.' MERS has authority to assign the Mortgage, with or without the demonstration of its principal's assent." *Abate v. Freemont Inv. & Loan,* 2012 WL 6115613, at *8 (Mass. Land Ct., Dec. 10, 2012) (footnote and citations omitted), *appeal pending,* No. SJC-11638; *Jenne v. Aurora Loan Services LLC,* 2014 WL 2922204, at *9 (Mass. Land Ct., June 26, 2014); *Stephens-Martin v. Bank of New York Mellon Trust Co.*, 2013 WL 5508415, at *7 (Mass. Land Ct., Oct. 1, 2013) ("There is a plethora of persuasive case law in this Commonwealth that recognizes MERS' authority to assign a mortgage on behalf of the underlying holder of the Note.").

The defendant has submitted proof supporting the assignment of the Carver Mortgage from MERS to First Horizon Home Loans (#19-1, Exh. D) and thereafter from First Horizon Home Loans to BONYM (#19-1, Exh. E) Both assignments (#19-1, Exh. D, E) were in writing signed by the representative or attorney in fact for the assignor and recorded at the Plymouth County Registry of Deeds in accordance with Mass. Gen. L. c. 183 § 3. *See, e.g., Ibanez,* 458 Mass. at 651, 941 N.E.2d at 53.

"[T]here must be proof that the assignment was made by a party that itself held the mortgage. A foreclosing entity may provide a complete chain of assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage." *Id.* (internal citation omitted)). These two assignments "establish a complete chain of title" and "[n]o further proof is needed." *Jepson v. HSBC Bank USA, Nat. Ass'n,* 2013 WL 639184, at *6 (D. Mass., Feb. 20, 2013), *aff'd,* (1 Cir., #13-1304, June 23, 2014); *Butler*, 748 F.3d at 33 n. 3, 34 ("In any case, recorded in the Norfolk County Registry of Deeds is an assignment showing that Butler's mortgage traveled from MERS directly to Deutsche Bank. This is a complete chain of title, sufficient to prove the validity of that assignment. *See Woods v. Wells Fargo Bank, N.A.,* 733 F.3d 349, 356 (1 Cir., 2013) (citing *Ibáñez*, 941 N.E.2d at 53)).

Second, the plaintiffs claim that they need the discovery to show non-compliance with the securitization documents. Relying on the terms of the Prospectus for the First Horizon Alternative Mortgage Securities Trust 2005-FA11 ("FHAMS 2005-FA11"), the plaintiffs allege that "in order for a loan originated by First Horizon to have ultimately become an asset of FHAMS 2005-FA11, the loan was first sold by First Horizon to First Horizon Asset Securities

Inc., which subsequently engaged in one or more additional transactions in order to transfer the loan in question to the trust." (#8 ¶ 27) Because "First Horizon Asset Securities Inc. is not and at no time relevant to this petition was First Horizon Asset Securities Inc. ever a member of MERS," (#8 ¶ 28), under the MERS registration system and rules, "[o]nce Petitioners' loan was acquired by First Horizon Asset Securities Inc. the mortgage title owned by MERS as nominee for First Horizon must have been assigned by MERS to First Horizon Asset Securities Inc., and the assignment recorded in the Plymouth County Registry of Deeds." (#8 ¶ 33) According to the allegations of the Second Amended Petition:

> If the transactions in the Prospectus actually occurred (such that BONYM as trustee for FHAMS 2005-FA11 ultimately became the lawful owner of Petitioners' loan), and if MERS actually complies with its rules, then at some point after November 21, 2005 First Horizon Asset Securities Inc. held Petitioners' MERS mortgage by assignment from MERS to First Horizon Asset Securities Inc., an assignment that was executed but never recorded.

Second Amended Petition, #8 ¶ 35.

In summary, according to the plaintiffs, if the terms of the securitized trust were followed, the Carver Mortgage should have been transferred out of

13

MERS to First Horizon Asset Securities Inc. prior to the assignment of mortgage from MERS to First Horizon Home Loans effective December 17, 2008, and thereafter the June 13, 2012 assignment from First Horizon Home Loans to BONYM.

The Carvers' allegations involve a purported failure to comply with the securitized trust documents. However, such a challenge is not cognizable. According to the First Circuit, "claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing." *Woods,* 733 F.3d at 354 (internal citation omitted); *see also Butler,* 748 F.3d at 33 n. 3, 37; *Jepson,* 2013 WL 639184, at *5 ("[B]oth state and federal courts in Massachusetts have uniformly held that mortgagors may not attack an assignment based on alleged failures to comply with PSAs, which are contracts to which the borrowers are not a party."); *Jenne,* at *10 ("Generally, pooling and servicing agreements are contractual arrangements between a depositor, a servicer, and a trustee, to facilitate the securitization of mortgage assets. Mortgagors' attacks on mortgage assignments predicated upon alleged violations of pooling and servicing agreements have been repeatedly dismissed by Massachusetts courts on the

grounds that mortgagors lack standing to make such claims.").

Third, to the extent that the discovery is sought to attack the execution of the assignments, plaintiffs lack standing. By statute in Massachusetts, the requirements for a valid mortgage assignment are as follows:

> Notwithstanding any law to the contrary . . . [an] assignment of [a] mortgage . . . executed before a notary public . . . by a person purporting to hold the position of president, vice president, . . . or other officer . . . of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity . . . shall be binding upon such entity . . . .

Mass. Gen. L. c. 183 § 54B.

Each of the mortgage assignments in this case contain recitations that a named authorized person appeared personally before a named commissioned notary public. (#19-1, Exh. D, E) Each of the mortgage assignments is attested to, signed and dated by the individual notary. (#19-1, Exh. D, E) In other words, the mortgage assignments comply with § 54B. While the Carvers contend that the two signatories did not personally appear before the notaries, these allegations "fail[] to state a claim [as] [t]he acknowledged Assignment is presumptively valid under G. L. c. 183, § 54B." *Abate,* 2012 WL 6115613, at *10; *Butler,* 748 F.3d at 34; *Mitchell v. U.S. Bank Nat. Ass'n,* 2014 WL 1159707,

at *19-20 (Mass. Land Ct., Mar. 21, 2014).

In any event, the Carvers lack standing to raise the claim. Confronted with a comparable argument, the Massachusetts Appeals Court wrote:

> The homeowners seek to defeat summary judgment by maintaining that there is a dispute of material fact as to the validity of the assignment. At oral argument, they argued that even though the assignment on its face satisfies the applicable statutory requirements, the MERS vice-president who signed on behalf of MERS may not in fact have had the authority to do so, and they further suggested that the assignment was in fact not done in person before a notary public (but instead used an automated signature process known as 'robo-signing'). Putting aside the homeowners' failure to brief these issues and their failure to document such claims as part of the summary judgment record, these claims fail for a more fundamental reason. Because the record title holder of the mortgage satisfied the dictates of the statute governing the assignment of mortgages, the homeowners have no basis for arguing that the assignment is void. Regardless of whether any hidden problems they seek to raise might provide a basis for a third party to claim that the assignment was potentially voidable, the homeowners themselves have no right to raise such issues.

*Bank of New York Mellon Corp. v. Wain*, 85 Mass. App. Ct. 498, 503-04, 11 N.E.3d 633 (Mass. App. Ct. 2014), 638-39; *Butler*, 748 F.3d at 37 ("[H]aving only presented facts sufficient to show the assignment was voidable under Massachusetts law, [plaintiff] lacks standing to challenge [defendant's] possession of the mortgage on this ground.").

### III. Conclusion and Order

In conclusion, plaintiffs' counsel has sought discovery on an incorrect legal theory (i.e., that MERS cannot be a mortgagee) and on arguments which courts have held are either irrelevant and/or as to which the plaintiffs lack standing. Therefore, it is ORDERED that Plaintiff's Revised Motion to Compel Discovery (#58) be, and the same hereby is, DENIED.[2]

/s/ Robert B. Collings
ROBERT B. COLLINGS
December 10, 2014. United States Magistrate Judge

---

[2] Any objections to this Order must be filed within fourteen days of today's date. *See* Rule 72(a), Fed. R. Civ. P.